IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| THE CONSTRUCTION INDUSTRY RETIREMENT FUND OF ROCKFORD, ILLINOIS and THE CONSTRUCTION INDUSTRY WELFARE FUND OF ROCKFORD, ILLINOIS, | ) ) ) ) ) | |
| | ) | District Judge: |
| Plaintiffs, | ) ) | Magistrate Judge: |
| vs. | ) ) ) | Case No: |
| MARTIN PRECAST SERVICES, INC., | ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT

Plaintiffs, The Construction Industry Retirement Fund of Rockford, Illinois and The Construction Industry Welfare Fund of Rockford, Illinois, by their attorneys, WilliamsMcCarthyLLP, bring this Complaint against Defendant, Martin Precast Services, Inc.

### COUNT I
### (Failure to Pay Contributions to the Funds)

1. Jurisdiction in this cause is based upon §301 of the Labor-Management Relations Act ("LMRA"), as amended. 29 U.S.C. § 185(a).

2. Jurisdiction in this cause is also based upon §502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended. 29 U.S.C. § 1132.

1

3. Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) in this District because The Construction Industry Retirement Fund of Rockford, Illinois and The Construction Industry Welfare Fund of Rockford, Illinois is administered in Rockford, Illinois (collectively referred to as "the Funds" or "Plaintiffs").

4. The Funds are a multi-employer benefits plans within the meaning of ERISA. They are established and maintained pursuant to Agreements and Declarations of Trust in accordance with § 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have standing to sue pursuant to 29 U.S.C. § 1132(d)(1) and 29 U.S.C. § 185(a).

5. Defendant is engaged in the construction industry and is doing business within this geographic area, is an industry affecting interstate commerce, and is an employer within the meaning of § 3(5) of ERISA and § 301(a) of the LMRA.

6. Bricklayers & Allied Craftworkers ("the Union") is a labor union which represents its members in negotiations and dealing with employers with respect to rates of pay, hours of work, and other conditions of employment.

7. On or about February 1, 2012, Defendant entered into a Participation Agreement with the Union, and the signatory page is attached hereto and made a part hereof as **Exhibit A**.

8. Under the terms of the Participation Agreement, and the Collective Bargaining Agreement and Trust Agreements incorporated therein (the "Agreements"), Defendant is required to make contributions on behalf of its employees covered by the Agreements for pension benefits, health and welfare benefits, apprentice, working dues and to submit monthly remittance reports in

which it identifies the employees covered under the Agreements and the amount of contributions to be remitted to the Funds on behalf of each covered employee.

9. Under the terms of the Agreements, contributions to the Funds are due on the 15th day of the month following the month hours are worked and are considered delinquent after the 25th day of the month.

10. Under the terms of the Agreements, any employer who fails to make the contributions by the 25th day of the month after the work was performed is required to pay an additional amount of ten percent (10%) in liquidated damages, along with all legal fees and costs expended to collect the amounts owed.

11. Under the terms of the Agreements to which Defendant is bound, Defendant is required to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

12. Beginning January 31, 2018, Defendant has failed to report and/or pay contributions and/or liquidated damages owed to the Funds in violation of its contractual obligations and the obligations under State and Federal law. (See **Exhibit B** attached hereto and made a part hereof).

13. As a direct and proximate result of Defendant's failure to pay contributions, Defendant's employees are in jeopardy of losing their health and welfare eligibility and benefits.

14. Defendant's actions in failing to make timely reports and contributions violate § 515 of ERISA, 29 U.S.C. § 1145, and §301 of the LMRA. 29 U.S.C. § 185.

15. Pursuant to § 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), §301 of the LMRA, 29 U.S.C. § 185, and the terms of the Agreements, Defendant is liable to the Funds for

unpaid contributions, as well as interest and liquidated damages on the unpaid and late contributions, reasonable attorney's fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter a Judgment against Defendant, Martin Precast Services, Inc., as follows:

(a) Directing Defendant to submit its books and records to an audit on demand by Plaintiffs;

(b) Entering judgment in a sum certain against Defendant on any amount shown due and owing pursuant to the audit, including unpaid contributions, liquidated damages, interest, audit costs and attorney's fees and costs;

(c) Enjoining Defendant from violating the terms of the Agreements;

(d) Awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate; and

(e) Ordering Defendant to remain current in payment of all contributions to the Funds.

THE CONSTRUCTION INDUSTRY RETIREMENT FUND OF ROCKFORD, ILLINOIS and THE CONSTRUCTION INDUSTRY WELFARE FUND OF ROCKFORD, ILLINOIS, Plaintiffs,
By: WILLIAMSMCCARTHYLLP

/s/ Troy E. Haggestad
Troy E. Haggestad (#06229384)
WILLIAMSMcCARTHYLLP
120 West State Street, Suite 400
P.O. Box 219
Rockford, IL 61105-0219
815/987-8900
thaggestad@wilmac.com

## Construction Industry Welfare Fund of Rockford, Illinois
## Participation Agreement

This Participation Agreement is effective as of **February 1, 2012**, and is made by and between the Construction Industry Welfare Fund of Rockford, Illinois (the "**Welfare Fund**") and ᴅʟ Martin Pre Cast _____ (the "**Employer**").

The Welfare Fund has been established by an Agreement and Declaration of Trust effective April 20, 1954, as amended from time to time ("Trust Agreement"), for the purpose of providing welfare benefits for employees represented through collective bargaining by the unions and other non-bargaining unit employees.

The Employer is a signatory to a collective bargaining agreement with at least one of the Welfare Fund's member unions ("Unions"). The Employer desires to enable its non-bargaining unit employees to participate in the Welfare Fund in accordance with eligibility, benefit and other terms and conditions as set forth in the Trust Agreement, applicable Plan documents, this Participation Agreement, and as otherwise set forth, defined or amended by the Trustees of the Welfare Fund.

IT IS AGREED that the recitals set forth above are a material part of this Agreement and it is further agreed as follows:

1. The Employer must be a signatory to a collective bargaining agreement with at least one of the Welfare Fund's member Unions during the term of this Agreement.

2. For purposes of this Agreement, the term "**Employee**" shall be defined to include all non-bargaining unit employees of the Employer who are regularly scheduled to work or employed an average of at least **30 hours** per week; *provided, however*, that the term "Employee" shall not include any employee who has voluntarily elected, in writing, to opt out of the coverage contemplated by this Agreement, if the employee is covered by a plan maintained or sponsored by an employer other than the Employer. The Employer shall provide a list of all employees who choose to opt out and, upon request, shall provide a copy of each such employee's election to opt out to the Welfare Fund. Employees who opt out of coverage shall not be allowed to opt in at a later date except as provided by the Plan's special enrollment rules.

3. Employees who are provided coverage by the Welfare Fund under this Agreement shall be provided coverage in accordance with the terms and conditions of applicable Plan documents with respect to non-bargaining unit employees. The Employer acknowledges that the benefits and other terms and conditions applicable to non-bargaining unit employees and their dependants may differ from those applicable to bargaining unit employees.

EXHIBIT A

4. To be covered by and receive benefits from the Fund, each Employee must be actively performing services for the Employer. Covered Employees may include individuals while on leave of absence for a period not to exceed 12 months, but otherwise shall not include any individuals following a reduction in regularly scheduled hours below 30 hours per week except as required under the COBRA laws. Covered Employees shall not include any individuals following their retirement or other termination of employment, except as required under the COBRA laws, or if and as allowed by the Welfare Fund in accordance with the rules established by the Trustees of the Welfare Fund from time to time regarding retiree benefits for non-bargaining unit employees.

5. The Employer shall contribute to the Fund for **173 hours** per month for all of its Employees as defined by this Agreement, regardless of the actual hours worked by those individuals in any given week, at the contribution rates as determined from time to time by the Trustees of the Fund.

6. An Employer may provide coverage under this Agreement to Owners and Employees who perform bargaining unit work, provided they have met the criteria for eligibility in the Plan. Any such Owners and Employees shall be provided coverage in the Plan as non-bargaining unit employees. For such Owners and Employees, the Employer shall pay the greater of 173 hours each month or the actual hours worked performing bargaining unit work. Any Employer contributions made for bargaining unit work performed by such an Owner or Employee will be retained by the Fund for purposes of offsetting benefit and administration expenses, and will not be credited to non-bargaining unit members, except to the extent that the Trustees may elect to allocate funds to a Health Reimbursement card held by the non-bargaining unit member. If the Employer pays on behalf of any non-bargaining unit employee or owner, the Employer also must make contributions on behalf of bargaining unit employees, and its failure to make or pay required contributions may result in an immediate denial of benefits.

7. Increases in the contribution rates shall become effective on the date approved by the Trustees of the Fund.

8. A Union cannot waive the requirement to pay 173 hours for all Employees.

8. By signing this Agreement, the Employer hereby adopts and agrees to be bound by the Trust Agreement of the Welfare Fund and other applicable Plan documents, as amended from time to time, including but not limited to the Fund's right to conduct audits, as well as any rules and regulations promulgated by the Welfare Fund's Board of Trustees.

10. Monthly contributions must be received by the Trust Fund office no later than the 15th day of each month following the month for which the payment is due. Any Employer who has failed to make contributions, underpaid or made untimely payments shall be obligated to pay the Welfare Fund: a) all costs, fees or other expenses incurred in any audit of the Employer; (b) any amounts the Welfare Fund is required to pay out for the benefit of an Employee who would be eligible for coverage except for the failure of the Employer to make required contributions on his or her behalf; (c) liquidated damages in an amount that is equal to ten percent (10%) of the

amount of contributions due; and (d) the reasonable attorney's fees and other costs incurred by the Welfare Fund in the collection process, including court fees, audit fees and litigation expenses.

11. The Welfare Fund may from time to time audit eligibility, claims and benefits for purposes of confirming that the individuals for whom benefits under the Plan will be or have been paid are proper Employees as defined in this Agreement (or their dependants). In the event the Fund determines that benefits have been paid to or on behalf of an individual who is not an Employee as defined in this Agreement (or a dependant of a proper Employee), the Fund shall have the right to full reimbursement of the benefits paid from either the Employee or the Employer. Such amounts shall be promptly reimbursed to the Fund, and the Fund shall be entitled to recover the attorney's fees it incurs in collecting such amounts, including any attorney's fees incurred in its pre-litigation efforts to collect such amounts.

12. The Employer agrees to indemnify, hold harmless, and defend the Welfare Fund and its trustees, employees and agents from and against any and all liabilities, actions, claims, damages, costs, losses and expenses (including without limitation, reasonable costs of investigation and attorneys' fees) caused by or arising out of the Employer's refusal or failure to make contributions on behalf of any non-bargaining unit employees of the Employer who are regularly scheduled to work or employed an average of at least 30 hours per week.

13. This Agreement may not be modified or amended by any oral or verbal promise. Any proposed modification or change of this Agreement must be made in writing, refer to this Agreement, be approved by the Welfare Fund's Board of Trustees or its duly authorized designee, and be executed by both parties.

14. Except to the extent governed by the Employee Retirement Income Security Act ("ERISA"), this Agreement shall be subject to and construed under the laws of the State of Illinois. If any portion of this Agreement is determined to be unenforceable, such determination shall not affect the enforceability of the remainder of this Agreement which shall remain in full force and effect.

15. This Agreement and the Employer's adoption of the Trust Agreement and other requirements referred to above shall become effective on the date first written above, and shall continue in full force and effect so long as the Employer is a signatory to a collective bargaining agreement with one of the Fund's member unions, until and unless this Agreement is terminated as provided below.

(a) This Agreement shall terminate automatically and without further notice upon the termination of the Employer's collective bargaining agreement with a member Union.

(b) This Agreement may also be terminated by either party, with the consent of the Union(s) with which the Employer has a collective bargaining agreement, by providing the other party with ninety (90) days' written notice of termination; *provided, however*, that, if the Employer terminates this Agreement within one year of its execution, the Trustees of the Fund

determine that the Employer entered into this Agreement in order to secure benefits for any particular individual(s) on account of health conditions known to the Employer before entering into this Agreement, then the Fund shall have the right to seek reimbursement of any benefits provided to such individual(s), including reasonable attorney's fees and other costs incurred in seeking such reimbursement.

16. This Agreement shall not bind the parties in any way until all of the following conditions have been met: (a) this Agreement is signed on behalf of the Employer, and (b) this Agreement is signed on behalf of the Welfare Fund as indicated below. Once these conditions are met, this Agreement shall be effective as of the date first set forth above.

17. This Agreement shall inure to the benefit of and be binding on the parties and their respective successors and assigns.

INTENDING TO BE LEGALLY BOUND, the parties have executed this Participation Agreement as of the date first set forth above.

A copy of the Employer's current collective bargaining agreement including all signature pages must be submitted along with the signed Participation Agreement.

**Employer:** Marin Precast Services   Date: 12-2-13
[Print or Type Name of Employer Entity]

BY: Martin Sosa
Its: _____

Employer's Address:

1906 Industrial Park Rd.
Rock Falls, IL 61071

**Construction Industry Welfare Fund of Rockford, Illinois**

BY: _____   Date: _____
One of its Management Trustees

BY: _____   Date: _____
One of its Union Trustees

CONSTRUCTION INDUSTRY FUND OF ROCKFORD
1322 EAST STATE STREET SUITE 300
ROCKFORD, IL 61104

815-399-0800

MARTIN PRECAST SERVICES
1906 INDUSTRIAL PARK ROAD
ROCK FALLS, IL 61071

Page 1 of 1

11/29/2018

10286

Your payroll submission(s) for the following were delinquent. You have been assessed a delinquent penalty as follows:

| ACCT | FUND | PAY PERIOD | DEPOSIT DT | FUND AMT | % | PENALTY AMT | PD AMT | PD DT | WAIVE |
|---|---|---|---|---|---|---|---|---|---|
| CIRBCT | CIPN | 01/31/2018 | 04/06/2018 | $912.05 | 10.00 | $91.21 | | | |
| CIRBCT | CIWFR | 01/31/2018 | 04/06/2018 | $841.50 | 10.00 | $84.15 | | | |
| CIRBCT | CIPN | 03/31/2018 | 06/29/2018 | $2,124.54 | 10.00 | $212.45 | | | |
| CIRBCT | CIWFR | 03/31/2018 | 06/29/2018 | $1,960.20 | 10.00 | $196.02 | | | |
| CIRBCT | CIPN | 04/30/2018 | 06/29/2018 | $1,888.48 | 10.00 | $188.85 | | | |
| CIRBCT | CIWFR | 04/30/2018 | 06/29/2018 | $1,742.40 | 10.00 | $174.24 | | | |
| CIRBCT | CIPN | 06/30/2018 | 10/15/2018 | $1,856.29 | 10.00 | $185.63 | | | |
| CIRBCT | CIWFR | 06/30/2018 | 10/15/2018 | $1,790.55 | 10.00 | $179.06 | | | |
| CIRBCT | CIPN | 07/31/2018 | 10/15/2018 | $1,856.29 | 10.00 | $185.63 | | | |
| CIRBCT | CIWFR | 07/31/2018 | 10/15/2018 | $1,790.55 | 10.00 | $179.06 | | | |
| CIRBCT | CIPN | 08/31/2018 | 10/15/2018 | $1,856.29 | 10.00 | $185.63 | | | |
| CIRBCT | CIWFR | 08/31/2018 | 10/15/2018 | $1,790.55 | 10.00 | $179.06 | | | |

Totals  $21,465.00  $19,424.01

Total Due upon Receipt  $2,040.99

Please remit penalty due under separate cover from any hours submissions. Please attach a copy of this letter with your remittance.
Thank you



EXHIBIT
B